UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY,

                  Plaintiff,

      -against-

CENTERS FOR DISEASE CONTROL AND
PREVENTION AND U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

                Defendants.

20 Civ. 2761 (AT)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2528
E-mail: natasha.teleanu@usdoj.gov

NATASHA W. TELEANU
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...........................................................................................................1

    I.      Plaintiff's FOIA request..........................................................................................1

    II.     CDC's Response to Plaintiff's FOIA Request........................................................2

    III.    Procedural History ................................................................................................4

ARGUMENT .................................................................................................................4

    I.      Legal Standard for Summary Judgment in FOIA Actions.....................................4

    II.     CDC's FOIA Searches Were Reasonable and Adequate........................................6

    III.    CDC Properly Withheld Privileged Information Pursuant to Exemption 5 ............8

    IV.   CDC Produced Any Reasonably Segregable Portions of the Challenged
           Documents ..........................................................................................................15

CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*ACLU v. DOJ,*
   210 F. Supp. 3d 467 (S.D.N.Y. 2016) ..................................................................... 10

*ACLU v. DOJ,*
   844 F.3d 126 (2d Cir. 2016) ................................................................................. 10

*ACLU v. NSA,*
   925 F.3d 576 (2d Cir. 2019) ................................................................................... 9

*Amnesty Int'l USA v. CIA,*
   728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................... 11

*Arthur Anderson & Co. v. IRS,*
   679 F.2d 254 (D.C. Cir. 1982) .............................................................................. 12

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice,*
   697 F.3d 184 (2d Cir. 2012) .................................................................................. 11

*Carney v. DOJ,*
   19 F.3d 807 (2d Cir. 1994) ............................................................................ *passim*

*CIA v. Sims,*
   471 U.S. 159 (1985) ............................................................................................... 4

*Color of Change v. DHS,*
   325 F. Supp. 3d 447 (S.D.N.Y. 2018) ................................................................... 10

*Competitive Enter. Institute v. Office of Science and Tech. Policy,*
   161 F. Supp. 3d 120 (D.D.C. 2016) ...................................................................... 12

*Conti v. DHS,*
   No. 12 Civ. 5287 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ................... 6

*CREW v. DHS,*
   No. 06 Civ. 0173, 2008 WL 2872183 (D.D.C. July 22, 2008) .............................. 14

*Dep't of the Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) ............................................................................................... 4, 9

*Ferguson v. FBI,*
   1995 WL 329307 (S.D.N.Y. June 1, 1995) ............................................................. 5

*Fox News Network, LLC v. U.S. Dep't of Treasury,*
   911 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................... 11

*Garcia v. DOJ*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ................................................................ 6

*Grand Cent. P'ship v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ............................................................... *passim*

*Hopkins v. HUD*,
    929 F.2d 81 (2d Cir. 1991) ................................................................. 9

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) .......................................................... 14

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ........................................................................ 4, 5

*Judicial Watch, Inc. v. DOJ*,
    365 F.3d 1108 (D.C. Cir. 2004) ................................................... 13, 14

*Long v. OPM*,
    692 F.3d 185 (2d Cir. 2012) ............................................................ 5, 6

*Loving v. DOD*,
    496 F. Supp. 2d 101 (D.D.C. 2007) ................................................... 15

*Martin v. DOJ*,
    488 F.3d 446 (D.C. Cir. 2007) ........................................................... 4

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ............................................................. 6

*N.Y. Times Co. v. DOJ*,
    756 F.3d 100 (2d Cir. 2014) ............................................................. 6

*NAACP Legal Defense & Educ. Fund, Inc. v. DOJ*,
    2020 WL 5237765 (S.D.N.Y. Sept. 2, 2020) ................................... 12

*Nat'l Council of La Raza v. DOJ*,
    339 F. Supp. 2d 572 (S.D.N.Y. 2004) ................................................ 9

*Nat'l Council of La Raza v. DOJ*,
    411 F.3d 350 (2d Cir. 2005) ............................................................. 9

*New York Times Co. v. DOJ*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) .............................................. 4, 5

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977) ....................................................................... 13

*NLRB v. Sears*,
    421 U.S. 132 (1975)..........................................................................................9

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975)..........................................................................................9

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007)......................................................................15

*Tigue v. DOJ*,
    312 F.3d 70 (2d Cir. 2002)...........................................................................8, 9

*United States v. Nixon*,
    418 U.S. 683 (1974)........................................................................................13

*Wadelton v. Dep't of State*,
    208 F. Supp. 3d 20 (D.D.C. 2016) ...................................................................6

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009)...............................................................................5

**STATUTE**

5 U.S.C. § 552...........................................................................................*passim*

**RULE**

Federal Rule of Civil Procedure 56 ..........................................................1, 15

Defendants Centers for Disease Control and Prevention ("CDC") and the United States
Department of Health and Human Services ("HHS" and collectively with the CDC,
"Defendants"), by their attorney, Audrey Strauss, Acting United States Attorney for the Southern
District of New York, respectfully submit this memorandum of law in support of their motion for
summary judgment under Federal Rule of Civil Procedure 56.

## PRELIMINARY STATEMENT

Plaintiff Knight First Amendment Institute at Columbia University ("Plaintiff") brought
this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel
disclosure of records pertaining to policies issued by CDC governing the circumstances in which
CDC employees may communicate with members of the press and the public. In response to
Plaintiff's FOIA request, CDC conducted reasonable searches for responsive records and
processed over six hundred responsive pages. Plaintiff challenges Defendants' withholding of
certain privileged records under Exemption 5 of FOIA, pursuant to one or both of the
deliberative process privilege and the presidential communications privilege. CDC's declaration
establishes that the CDC's searches were reasonable, adequate, and conducted in good faith. In
addition, the CDC's declaration and *Vaughn* index explain why the challenged records are
privileged and exempt from disclosure under FOIA Exemption 5. Accordingly, the Court should
grant summary judgment to Defendants.

## BACKGROUND

### I.   Plaintiff's FOIA request

On March 19, 2020, Plaintiff sent a FOIA request to Defendants, seeking records
"governing the circumstances in which CDC employees may communicate with members of the
press and the public." Am. Compl. (ECF No. 17) ¶ 16 & ECF No. 17-1. Specifically, Plaintiff
sought release of the following:

1. Any records relating to policies or procedures governing public communications by CDC employees or contractors about the coronavirus;

2. Any records relating to policies or procedures for the coordination of communications strategy between the CDC (or its employees) and the Coronavirus Task Force led by Vice President Pence;

3. Emails sent by CDC Public Affairs Officer Jeffrey Lancashire on or around August 31, 2017, that contain instructions for employees regarding communications with members of the news media or the public;

4. The CDC's policies on employee communications with news media and the public in effect from January 2017 to present; and

5. Any directives or guidance related to the policies on employee communications with news media and the public in effect from January 2017 to the present.

*See* ECF No. 17-1 at 4-5; *see also* Declaration of Roger Andoh ("Andoh Decl.") ¶ 5. Plaintiff requested expedited processing and sought a waiver of search, review, and duplication fees. *See* ECF No. 17 ¶¶ 18-19.

## II.    CDC's Response to Plaintiff's FOIA Request

By a letter dated March 24, 2020, CDC's FOIA Office acknowledged Plaintiff's FOIA request and assigned it tracking number 20-00979-FOIA. *See* ECF No. 17-2; *see also* Andoh Decl. ¶ 6. In the letter, the CDC's FOIA Office explained that it would need to search for and collect records from field facilities, archives, or other locations; search for, collect, or examine a great many records in response to the request; and consult with another office or agency that has substantial interest in the determination of the request. *See id.* Because of these steps, CDC would be unable to comply with the twenty-working day time limit or the additional ten days provided by the FOIA statute. *See id.*

Two days later, on March 26, 2020, the CDC FOIA Office sent a follow-up letter notifying Plaintiff that its request was overly broad. *See id.* ¶ 7. The CDC FOIA Office explained that

CDC employs over 15,000 employees. For items #1 and #2, you ask for "any records." Without specifying an office(s) and/or names of persons would require a wide search which the agency cannot accomplish with reasonable effort. Moreover, the use of the "coronavirus" term for the current pandemic has become universal.

To assist the agency to conduct a reasonable search for items #1 and #2, please provide our office with additional information, such as: names and email addresses of persons within the agency in whose records you seek; a date range for records; recommended non-universal coronavirus pandemic search terms; office(s) likely to have records requested; and/or, the precise document you seek.

*Id.*; *see also* ECF No. 17-3 at 2. On March 27, 2020, Plaintiff informed the CDC FOIA analyst assigned to process Plaintiff's FOIA request that, in regard to request items 1 and 2, CDC could limit its search to records created on or after January 29, 2020, from three identified offices and eleven identified custodians. *See* Andoh Decl. ¶ 9.

As a result of its searches, and consistent with the Court's June 4, 2020 Order, CDC provided Plaintiff with documents in two sets. *See id.* ¶¶ 8-18. On June 9, 2020, CDC released records responsive to Plaintiff's "prioritized records" request for the CDC's currently operative employee communications or speech policies, and any policies or guidelines concerning the coordination of statements and/or public appearances with the Office of Vice President Mike Pence or the White House Coronavirus Task Force. *Id.* ¶ 18. The June 9, 2020 release consisted of 15 pages in full or part, and 20 pages were withheld in full. *Id.* The withholdings were pursuant to 5 U.S.C. § 552(b)(5) and (b)(6). *Id.* On July 6, 2020, CDC released the remaining records responsive to Plaintiff's request, consisting of 629 pages total—100 pages were released in full, 362 pages were withheld in full, and 167 pages were released in part. *Id.* Information was withheld pursuant to 5 U.S.C. §552(b)(5) and (b)(6). *Id.* The Exemption 5 withholdings consisted of material protected by the deliberative process privilege and the presidential communications privilege. *Id.* In addition, following receipt of Plaintiff's challenges, CDC undertook a subsequent review and released additional material to Plaintiff. *Id.*

### III.      Procedural History

On April 2, 2020, Plaintiff filed a complaint relating to its March 19, 2020 FOIA request. *See generally* ECF No. 1. Thereafter, Plaintiff filed an amended complaint. *See* ECF No. 17. On June 4, 2020, the Court entered a scheduling order setting forth the June 9, 2020 and July 6, 2020 production deadlines. *See* ECF No. 24.

Following the July 6, 2020 release, the parties informed the Court that there remained outstanding disputes as to some of the records withheld in full or in part pursuant to Exemption 5. *See* ECF No. 28; ECF No. 28-1 (identifying specific challenged withholdings). Thereafter, the Court set a briefing schedule for the parties' cross-motions for summary judgment. *See* ECF No. 29. Defendants provided Plaintiff with a preliminary draft *Vaughn* index on August 26, 2020, detailing the documents that Plaintiff seeks to challenge. *See id.*

**ARGUMENT**

### I.      Legal Standard for Summary Judgment in FOIA Actions

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information 'may harm legitimate governmental or private interests,'

4

Congress created several exemptions to FOIA disclosure requirements."); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment. *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *see also Long v. OPM*, 692 F.3d 185, 190 (2d Cir. 2012) ("In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence . . . ."). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812. Summary judgment as to the applicability of a FOIA exemption is "warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (quotation marks omitted). "Affidavits submitted by an agency are accorded a presumption of good faith," and a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney*, 19 F.3d at 812 (quotation marks omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (quotation marks omitted).[1]

---

[1] Defendants have not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times*, 872 F. Supp. 2d at 314 (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

II.     **CDC's FOIA Searches Were Reasonable and Adequate**

The government does not bear a heavy burden in defending the searches it performed in response to a FOIA request; the government need only show "that its search was adequate." *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). An agency's search for records is considered "adequate" if it was "reasonably calculated to discover" documents responsive to the FOIA request, not that the search "actually uncovered every document extant." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). A search "need not be perfect, but rather need only be reasonable." *Id.*

"The adequacy of a search is not measured by its results, but rather by its method." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 124 (2d Cir. 2014). "If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. DOJ*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). Where the agency's declarations demonstrate that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to impugn the good faith presumption accorded to an agency declaration. *Carney*, 19 F.3d at 813. Furthermore, "FOIA does not impose a document retention requirement on agencies." *Wadelton v. Dep't of State*, 208 F. Supp. 3d 20, 28 (D.D.C. 2016); *Conti v. DHS*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *14 (S.D.N.Y. Mar. 24, 2014). Here, CDC's searches in response to Plaintiff's FOIA request were reasonable and adequate under FOIA, and there is no evidence of agency bad faith.

The searches undertaken by CDC in response to Plaintiff's FOIA request were reasonable and adequate, and should be upheld. In connection with searches for documents responsive to

items 3, 4, and 5 of Plaintiff's FOIA request, CDC's FOIA Office communicated with two subject matter experts to conduct and supervise those searches. *See* Andoh Decl. ¶ 16. On March 26, 2020, the CDC FOIA Office authorized an enterprise, i.e., a computer-generated search of all contents of the agency's email system, for documents responsive to request item 3 (emails sent by CDC Public Affairs Office Jeffrey Lancashire on or around August 31, 2017, that contain instructions for employees regarding communications with members of the news media or the public). *Id.* ¶ 8. That search identified no documents responsive to request item 3. *Id.* ¶ 10. Also on March 26, 2020, the CDC FOIA Office requested that CDC's Office of the Associate Director for Communications ("OADC") search for documents responsive to request item 4 (the CDC's policies on employee communications with news media and the public in effect from January 2017 to present) and item 5 (any directives or guidance related to the policies on employee communications with news media and the public in effect from January 2017 to the present). *See* Andoh Decl. ¶ 8. In response, CDC's OADC reported that it only found one document, a news media policy, updated in 2019, in response to item 4, and found two emails in response to item 5. *See id.* ¶ 13.

On April 6, 2020, the CDC FOIA Office authorized an enterprise search of the agency's email system for documents responsive to request item 1 (any records relating to policies or procedures governing public communications by CDC employees or contractors about the coronavirus) and item 2 (any records relating to policies or procedures for the coordination of communications strategy between the CDC (or its employees) and the Coronavirus Task Force led by Vice President Pence, consistent with the limiting parameters identified by Plaintiff in its March 27, 2020 email. *See id.* ¶ 12. This enterprise search yielded approximately 60,000 documents. *Id.* ¶ 14. After discussions with CDC's subject matter experts, the FOIA Office

determined that the agency's earlier search and collection efforts for items 1 and 2 had been

overly broad, and accordingly refined the search parameters to include the following search

terms: media strategy, covid communication, centralized communications, social media and

news media, and communication strategy. *Id.* ¶ 15. Those search terms were then used to

conduct an enterprise search of the mailboxes of eight CDC officials identified in Plaintiff's

March 27, 2020 narrowing proposal. *Id.* In pre-motion communication, Plaintiff raised questions

about the search, to which the accompanying CDC declaration responds. *See id.* ¶ 17.

In summary, CDC conducted an adequate search of all locations that were reasonably

likely to contain records responsive to Plaintiff's FOIA request. Accordingly, the Court should

grant summary judgment to Defendants on the adequacy of their searches in response to

Plaintiff's FOIA request. *See Grand Cent. P'ship*, 166 F.3d at 489.

## III.   CDC Properly Withheld Privileged Information Pursuant to Exemption 5

CDC properly asserted Exemption 5 over only those portions of the responsive

documents and emails that are protected by either or both the deliberative process privilege and

the presidential communications privilege. Exemption 5 protects "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the

agency."  5 U.S.C. § 552(b)(5). "Stated simply, agency documents which would not be

obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*,

attorney-client, work-product, executive privilege) are protected from disclosure under

Exemption 5." *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (citation omitted). As further set

forth in Defendants' declaration and *Vaughn* index, the documents at issue are protected either in

whole or in part by Exemption 5 because the deliberative process privilege and/or the

presidential communications privilege apply.

1.      **Deliberative Process Privilege**

The deliberative process privilege "protect[s] open and frank discussion" among government decision-makers and safeguards their decision-making process, *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001), by shielding them "from being forced to operate in a fishbowl," *ACLU v. NSA*, 925 F.3d 576, 592 (2d Cir. 2019) (quotation marks omitted). An agency document "may be withheld pursuant to the deliberative process privilege if it is: (1) 'predecisional,' *i.e.*, 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually related to the process by which policies are formulated.'" *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356 (2d Cir. 2005) (citing *Grand Cent. P'ship*, 166 F.3d at 482) (alteration omitted). A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision," *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975), and when it "precedes, in temporal sequence, the 'decision' to which it relates," *Grand Cent. P'ship*, 166 F.3d at 482. However, the government need not "identify a specific decision" made by the agency to establish the predecisional nature of a particular record. *NLRB v. Sears*, 421 U.S. 132, 151 n.18 (1975); *accord Tigue*, 312 F.3d at 80. So long as the document "was prepared to assist [agency] decisionmaking on a specific issue," it is predecisional. *Tigue*, 312 F.3d at 80.

In determining whether a document is deliberative, courts inquire as to whether it "formed an important, if not essential, link in [the agency's] consultative process." *Grand Cent. P'ship*, 166 F.3d at 483. Deliberative documents include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Hopkins v. HUD*, 929 F.2d 81, 84–85 (2d Cir. 1991) (citation and quotation marks omitted). Draft documents and comments on drafts are "quintessentially predecisional and deliberative." *Nat'l Council of La Raza v. DOJ*, 339 F. Supp.

2d 572, 583 (S.D.N.Y. 2004); *see also, e.g.*, *Grand Cent. P'ship*, 166 F.3d at 482 ("The privilege protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"); *ACLU v. DOJ*, 844 F.3d 126, 132-33 (2d Cir. 2016); *ACLU v. DOJ*, 210 F. Supp. 3d 467, 476-77 (S.D.N.Y. 2016).

Here, Defendants properly withheld information contained in emails and draft documents pursuant to Exemption 5 and the deliberative process. The withheld records and portions of records are described in further detail in the CDC's declaration, as well as a detailed *Vaughn* index. *See* Andoh Decl. ¶¶ 20-22 & Ex. A (*Vaughn* index). Defendants withheld information pursuant to the deliberative process privilege contained in drafts of a never-finalized policy entitled Communication and Media Strategy for the Coronavirus Disease 2019 Response;[2] emails from 2017 discussing a new media clearance policy for all CDC media releases;[3] emails from 2020 discussing an interim media and communication clearance process;[4] and emails reflecting communications from the President's immediate advisors.[5] *See* Andoh Decl. ¶ 19 & Ex. A.

The drafts of the CDC Communication and Media Strategy for the Coronavirus Disease 2019 Response policy "reflect initial preliminary edits to a policy that was never ultimately finalized." Andoh Decl. ¶ 20. As explained in the CDC's *Vaughn* index, protection of these drafts is necessary to "protect against premature disclosure of proposed policies before they are actually adopted." *Id.*, Ex. A at entry numbers 1, 12-16, 18-20, 21-25, 29-32; *see also Color of*

---

[2] *See* Andoh Decl., Ex. A at entry numbers 1, 12-16, 18-20, 21-25, 29-32.

[3] *See id.* at entry numbers 2-8.

[4] *See id.* at entry numbers 27, 28, 33-35.

[5] *See id.* at entry numbers 9-11, 17, 26, 35.

*Change v. DHS*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) ("It is well-settled that draft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation by their authors or by their superiors." (citing *Amnesty Int'l USA v. CIA,* 728 F. Supp. 2d 479, 518 (S.D.N.Y. 2010)). The drafts of the policy were "revised and circulated to help frame ongoing deliberative discussions within CDC for anticipated consideration by CDC decisionmakers." Andoh Decl. ¶ 20. As such, CDC asserted the deliberative process privilege because the drafts "reflect an internal exchange of ideas and recommendations that occurred between CDC employees in formulating possible changes to CDC's media communications policy." *Id.* The drafts of the policy are pre-decisional "because they were prepared and exchanged prior to any finalized policy, and in fact no Communication and Media Strategy for the Coronavirus Disease 2019 Response policy was ever finalized." *Id.*; *see also Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 206-07 (2d Cir. 2012) (Where there is no evidence that a change in policy is based on draft documents, "ordering release of these never-finalized memoranda would fail to safeguard and promote agency decisionmaking processes by, for example, not protecting against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action, and failing to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism...." (internal citations and omitted)); *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 283 (S.D.N.Y. 2012) ("[T]he deliberative process is concerned with guarding against premature disclosure of unfinalized policies and is intended to prevent

public confusion through the dissemination of documents suggesting rationales not ultimately adopted by an agency….”). “Even where a draft never becomes final, the draft version remains predecisional.” *NAACP Legal Defense & Educ. Fund, Inc. v. DOJ*, 2020 WL 5237765, at *7 (S.D.N.Y. Sept. 2, 2020).

If CDC were to release an unfinalized policy, it could cause public confusion as to what constitutes final, implemented agency policy. *See* Andoh Decl. ¶ 20. Moreover, release of the never-finalized policy “could cause harm by providing the public with erroneous information on a particularly sensitive matter: how the agency should communicate information regarding the coronavirus.” *See* Andoh Decl., Ex. A (*Vaughn* index).

CDC also withheld as deliberative process privileged portions of emails from 2017 discussing an interim media clearance policy for all CDC media releases, including possible changes to the CDC media communications clearance policy, and clarification discussions about the new interim policy. *See* Andoh Decl., Ex. A at entry numbers 2-8. These email discussions reflect open, frank deliberative discussions on matters of policy between CDC staff members. *Id.* The documents concerning the 2017 media communications policy had previously been released with redactions pursuant to FOIA by HHS in 2017; the policy was considered to be tentative in nature because it had not yet been fully and formally released, and as a result, there was concern that the final, formal iteration of the policy might very likely change in some respect from the version being discussed. *See* Andoh Decl. ¶ 21; *see also Competitive Enter. Institute v. Office of Science and Tech. Policy*, 161 F. Supp. 3d 120, 128 (D.D.C. 2016) (The deliberative process privilege “shields from disclosure ‘all papers which reflect the agency’s group thinking in the process of working out its policy and determining what its law shall be.’”) (quoting *Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982)). CDC subsequently reexamined the

documents and the withholdings applied to them, and ultimately released a substantial portion of previously withheld material. Andoh Decl. ¶ 21. The remaining withholdings involve open, frank deliberative discussions on matters of policy between staff members. *See id.* Release could cause harm by chilling future free exchange of ideas and opinions by agency leadership on similarly sensitive matters. *Id.*

Similarly, CDC also withheld portions of five emails that involve discussions about a clearance process at issue that was not intended or expected to be a long-term or permanent one. *See* Andoh Decl. ¶ 22; Ex. A at entry numbers 27-28, and 33-35. These discussions involved open, frank deliberative discussions on matters of policy between staff members. *See* Andoh Decl. Ex. A an entry numbers 27-28. Instead, the process was an attempt by the government to articulate a framework for addressing—in the moment—the need for providing useful information as rapidly but also as thoughtfully as possible while the government and indeed the entire nation tried to deal as effectively as possible with a completely new, inherently unstable and unpredictable, and quickly evolving health crisis. *See* Andoh Decl. ¶ 22; *see also* Ex. A at entry numbers 33-35.

### 2. The Presidential Communications Privilege

Exemption 5 also exempts from disclosure information protected by the presidential communications privilege. *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). The Supreme Court has recognized a "presumptive privilege for Presidential communications" that is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974) ("*Nixon I*"). The presidential communications privilege protects "communications in performance of a President's responsibilities, . . . of his office, . . . and made in the process of shaping policies and making decisions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449

(1977) (citation and quotation marks omitted) ("*Nixon II*"). The privilege reflects recognition that "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Nixon I*, 418 U.S. at 708.

The presidential communications privilege provides broad protection for communications with the President, as well as communications involving senior presidential advisors. It "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *Judicial Watch*, 365 F.3d at 1114 (citation and quotation marks omitted); *see also In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) ("Even though the presidential privilege is based on the need to preserve the President's access to candid advice, none of the cases suggest that it encompasses only the deliberative or advice portions of documents."). Further, in addition to protecting communications directly with the President, the privilege protects communications involving senior presidential advisors, including "both [ ] communications which these advisors solicited and received from others as well as those they authored themselves," in order to ensure that such advisors investigate issues and provide appropriate advice to the President. *In re Sealed Case*, 121 F.3d at 752. The privilege also covers those communications "authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *Id.* And the privilege extends to both presidential communications and to records memorializing or reflecting such communications. *See CREW v. DHS*, No. 06 Civ. 0173, 2008 WL 2872183, at *3 (D.D.C. July 22, 2008) (documents memorializing

communications that were solicited and received by the President or his immediate advisors are subject to presidential communications privilege).

Defendants properly withheld certain information in the challenged records pursuant to Exemption 5 and the presidential communications privilege, as reflected in CDC's *Vaughn* and declaration.[6] Certain of the documents reflect communications to senior government officials from a senior presidential advisor regarding a coordinated media communication strategy for COVID-19. *See* Andoh Decl. ¶ 23 & Ex. A at entry numbers 9, 10, 11, 17, 26, 35. These documents and redactions are properly protected by the presidential communications privilege. *See id.* ¶ 23.

## IV.     CDC Produced Any Reasonably Segregable Portions of the Challenged Documents

Finally, CDC's declaration establishes Defendants' compliance with FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). CDC conducted a page-by-page analysis of each responsive document to determine whether any additional non-exempt material could be released, and concluded that there is no additional reasonably segregable material to release because it is privileged. *See* Andoh Decl. ¶ 24. Therefore, the Court should find that CDC properly complied with its duty to segregate exempt from non-exempt information. *See Sussman*, 494 F.3d at 1116-17.

---

[6] In the FOIA context, the presidential communications privilege need not be invoked by the President himself, but may be asserted by the agency withholding the records in question. *See, e.g.*, *Loving v. DOD*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007), *aff'd*, 550 F.3d 32 (D.C. Cir. 2008).

**CONCLUSION**

The Court should grant Defendants' motion and enter judgment in favor of Defendants

CDC and HHS under Rule 56 of the Federal Rules of Civil Procedure.


Dated:  September 4, 2020
           New York, New York

                                              Respectfully submitted,

                                              AUDREY STRAUSS
                                              Acting United States Attorney for the
                                              Southern District of New York

                               By:      _/s/ Natasha W. Teleanu_____
                                              NATASHA W. TELEANU
                                              Assistant United States Attorney
                                              86 Chambers Street, 3rd Floor
                                              New York, New York 10007
                                              Tel.:  (212) 637-2528
                                              E-mail: Natasha.Teleanu@usdoj.gov