UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE ) <br> AT COLUMBIA UNIVERSITY, ) <br> Plaintiff ) <br> ) <br> ) <br> v. ) <br> ) <br> CENTERS FOR DISEASE CONTROL AND ) <br> PREVENTION and UNITED STATES ) <br> DEPARTMENT OF HEATLH AND HUMAN ) <br> SERVICES, ) <br> Defendant ) <br> _____) | Civil Action No. 20-2761-AT |

## DECLARATION OF ROGER ANDOH

Pursuant to 28 U.S.C. § 1746, I, Roger Andoh, declare the following to be a true and correct statement of facts to the best of my knowledge and belief:

1.      I am the Freedom of Information Act ("FOIA") Officer for the Centers for Disease Control and Prevention ("CDC") and the Agency for Toxic Substances and Disease Registry ("ATSDR"), both agencies within the U.S. Department of Health and Human Services ("HHS"). I have held this position since June 26, 2016.  I make this declaration based upon my personal knowledge and upon information available to me in my official capacity, and if called and sworn as a witness, I could and would testify as set forth herein.

2.      As the FOIA Officer, I supervise and direct the day to day activities of the CDC/ATSDR FOIA Office (hereinafter referred to as "CDC FOIA Office").  The CDC FOIA Office is the central office responsible for responding to requests for information under the FOIA for records from all operating divisions of the CDC and the ATSDR.  FOIA requests are disseminated electronically to areas within the agency that are considered most likely to possess responsive records.  In my position, I determine whether to release or withhold records, or portions of

records, in accordance with the FOIA and the HHS implementing regulations. I also coordinate efforts, as necessary, when one or more of the CDC Centers/Institutes/Offices or one of the ATSDR Divisions is involved in responding to a FOIA request.

3. Due to the nature of my official duties, I am familiar with procedures followed by the CDC in responding to the FOIA request of Plaintiff, Knight First Amendment Institute (hereinafter "Plaintiff").

4. This declaration and attached exhibit explain the procedures that were followed in responding to Plaintiff's FOIA request and the statutory justifications for the withholding of any identified, responsive records or information.

### I. Administrative Processing of Plaintiff's Request

5. On March 20, 2020, CDC's FOIA Office received a FOIA request, dated March 19, 2020, from Stephanie Krent on behalf of Plaintiff. The request sought the following documents:

1. Any records relating to policies or procedures governing public communications by CDC employees or contractors about the coronavirus;

2. Any records relating to policies or procedures for the coordination of communications strategy between the CDC (or its employees) and the Coronavirus Task Force led by Vice President Pence;

3. Emails sent by CDC Public Affairs Officer Jeffrey Lancashire on or around August 31, 2017, that contain instructions for employees regarding communications with members of the news media or the public;

4. The CDC's policies on employee communications with news media and the public in effect from January 2017 to present; and

5. Any directives or guidance related to the policies on employee communications with news media and the public in effect from January 2017 to the present.

In light of the urgent public interest in information from the CDC regarding the novel coronavirus, we ask that you prioritize and produce on a rolling basis records responsive to the first two items of the request.

6. By a letter dated March 24, 2020, the CDC FOIA Office acknowledged the request and assigned it request number 20-00979-FOIA. In the letter, Plaintiff was also informed that the CDC FOIA Office would need to: search for and collect records from field facilities, archives, or other locations; search for, collect, or examine a great many records in response to the request; and consult with another office or agency that has substantial interest in the determination of the request. As a result, the CDC would be unable to comply with the twenty-working day time limit or the ten additional days provided by the statute.

7. On March 26, 2020, the CDC FOIA Office wrote again to Plaintiff and informed the requester that its request was overly broad:

CDC employs over 15,000 employees. For items #1 and #2, you ask for "any records". Without specifying an office(s) and/or names of persons would require a wide search which the agency cannot accomplish with reasonable effort. Moreover, the use of the "coronavirus" term for the current pandemic has become universal.

To assist the agency to conduct a reasonable search for items #1 and #2, please provide our office with additional information, such as: names and email addresses of persons within the agency in whose records you seek; a date range for records; recommended non-universal coronavirus pandemic search terms; office(s) likely to have records requested; and/or, the precise document you seek.

## II. The Administrative Search Process

8.  On March 26, 2020, the CDC FOIA Office authorized an enterprise, i.e., a computer-generated search of all contents of the agency's email system, for documents responsive to request item 3 and requested that CDC's Office of the Associate Director for Communications (hereinafter "OADC") search for documents responsive to request items 4 and 5.

9.  Via an email dated March 27, 2020, Plaintiff informed the FOIA analyst assigned to process the request that, in regard to its request items 1 and 2:

> . . . CDC can limit its search to (1) records created on or after January 29, 2020; and (2) the following offices and potential custodians:
>
> Offices:
>
> > Office of the Director
> >
> > Office of the Associate Director of Communication
> >
> > Speaker's Bureau
>
> Potential custodians:
>
> > Robert Redfield, CDC Director
> >
> > Anne Schuchat, Principal Deputy Director
> >
> > Michelle E. Bonds, Associate Director for Communication
> >
> > Jay C. Butler, Deputy Director for Infectious Diseases
> >
> > Martin Cetron, MD, Director of the Division of Global Migration and Quarantine
> >
> > John Dreyzehner, MD, MPH, FACOEM, Director of the Centers for Preparedness and Response
> >
> > Amy Heldman, Acting Branch Chief, News Media Branch
> >
> > Katherine Lyon Daniel, PhD, Deputy Director for Public Health Service and

    Implementation Science

    Jennifer Madans, Director of the National Center for Health Statistics

    Nancy Messonnier, Director of National Center for Immunization and Respiratory Diseases

    Stephen Redd, MD (RADM, USPHS), Director for the Office of Public Health Preparedness and Response

10. On March 30, 2020, the CDC FOIA analyst assigned to process the request was notified that the enterprise search had identified no documents responsive to request item 3.

11. On April 2, 2020, unbeknownst to CDC, Plaintiff filed a complaint with the District Court for the Southern District of New York which asserted as a cause of action CDC's failure to process the FOIA request it had received on March 20, 2020. The agency continued in its efforts to locate and provide documents responsive to that FOIA request within the FOIA framework until it was notified by HHS about the complaint.

12. On April 6, 2020, the CDC FOIA Office authorized an enterprise search of the agency's email system for documents responsive to request items 1 and 2, consistent with the limiting parameters identified by Plaintiff in its March 27, 2020 email.

13. On April 8, 2020, the CDC FOIA analyst assigned to process the request received a response via email from CDC's OADC reporting the results of its search for documents responsive to request items 4 and 5:

    For item 4: The only document found was a news media policy updated in 2019

    For item 5: Two emails were found

14. On April 10, 2020, the CDC FOIA analyst assigned to process the request was notified the enterprise search had identified ~60,000 documents responsive to request items 1 and 2.

15.   After discussions with agency subject matter experts (hereinafter "SMEs") the FOIA Office determined that the agency's earlier search and collection efforts had been overly broad. In particular, the FOIA Office, with the input of the SMEs, refined the search parameters for items 1 and 2 of the FOIA request to include the following search terms:

> media strategy
>
> covid communication
>
> centralized communications
>
> social media and news media
>
> communication strategy

On or about May 6, 2020, those terms were used to conduct an enterprise search of the mailboxes of eight of the eleven CDC officials named as potential records guardians in Plaintiff's March 27, 2020 narrowing proposal. With the help and advice of SME Michelle Bonds, the FOIA Office determined that the mailboxes of these eight officials were the most likely to contain documents responsive to the terms of Plaintiff's request:

1. Redfield, Robert R. (CDC/OD)
2. Schuchat, Anne MD (CDC/OD)
3. Bonds, Michelle E. (CDC/OD/OADC)
4. Butler, Jay C. (CDC/DDID/OD)
5. Messonnier, Nancy (CDC/DDID/NCIRD/OD)
6. Madans, Jennifer H. (CDC/DDPHSS/NCHS/OD)
7. Cetron, Marty (CDC/DDID/NCEZID/DGMQ)
8. Redd, Stephen (CDC/DDPHSIS/OD)

16.   Similarly, with regard to documents related to items 3, 4, and 5 of Plaintiff's FOIA

request, the FOIA Office communicated directly with SMEs Michelle Bonds and Loretta Lepore to conduct and supervise searches for responsive documents.

17. In total, the revised search strategy yielded 525 pages of electronically identified documents (some of which were duplicates) and 196 pages of manually identified documents which were responsive to Plaintiff's final narrowed request for documents. Plaintiff has expressed some surprise that, in particular, the searches did not yield many emails discussing or disseminating the policies and procedures that were the subject of Plaintiff's final narrowed request. However, the agency conducted its search based upon its understanding that the primary subjects of that request were the actual policies, directives, and guidance regarding specific types of employee communications, and not incidental documents related to the manner in which those policies and other guidance were disseminated to agency employees. The agency is confident that its search produced all documents responsive to the subject of the final narrowed request as it understood the meaning and scope of that request. The agency is not aware of any additional search strategies that would uncover additional responsive documents.

### III. Delivery of the Documents

18. Consistent with the Court's June 4, 2020 Order, the responsive documents were provided to Plaintiff in two sets:

On June 9, 2020: All records responsive to Plaintiff's "prioritized records" request for

(i) The CDC's currently operative employee communications or speech policies, and

(ii) Any policies or guidelines concerning the coordination of statements and/or public appearances with the Office of Vice President Mike Pence or the White House Coronavirus Task Force.

CDC released 15 pages in full or part, and withheld 20 pages in full. The withholdings were pursuant to 5 U.S.C. § 552(b)(5) and (b)(6).

On July 6, 2020: All remaining records responsive to Plaintiff's request, as narrowed by the parties' agreement. The July 6, 2020 release consisted of 629 pages of responsive records, including the records previously released to Plaintiff on June 9, 2020. The release consisted of 100 pages released in full, 362 withheld in full, and 167 released in part. Information was withheld pursuant to 5 U.S.C. § 552(b)(5) and (b)(6). The Exemption 5 withholdings consisted of material protected by the deliberative process privilege and the presidential communications privilege.  The agency has subsequently reviewed the documents withheld in full or in part and has determined that additional material contained in those pages – including 56 of the pages to whose withholding Plaintiff had objected. Because those newly reviewed pages have now been provided to Plaintiff, twelve items on Plaintiff's list of challenged pages are not included or addressed in the Vaughn Index; the pages at issue have been released in full.  In addition, seven other items on Plaintiff's list of challenged pages are still included and addressed in the *Vaughn* Index but have less information withheld than in the versions of those pages that were originally provided to Plaintiff.

### IV. Exemption 5 Withholdings

19. Attached as Exhibit A is a true and correct copy of a *Vaughn* index providing further information about each of the documents Plaintiff is challenging. As set forth in the *Vaughn* index, the withholdings fall into four general categories: (a) drafts of a CDC Communication and Media Strategy for the Coronavirus Disease 2019 Response policy that

were never finalized;[1] (b) emails from 2017 discussing a new media clearance policy for all CDC media releases;[2] (c) emails from 2020 discussing an interim media and communication clearance process;[3] (d) emails reflecting communications from the President's immediate advisors.[4]

20.  The draft documents, *see* Exhibit A at entry numbers 1, 12-16, 18-20, 21-25, 29-32, reflect initial, preliminary edits to a policy that was never ultimately finalized. The drafts were revised and circulated to help frame ongoing deliberative discussions within CDC for anticipated consideration by CDC decisionmakers. The drafts are withheld in full because they reflect an internal exchange of ideas and recommendations that occurred between CDC employees in formulating possible changes to CDC's media communications policy. The draft policy documents are withheld pursuant to Exemption 5 are pre-decisional because they were prepared and exchanged prior to any finalized policy, and in fact no Communication and Media Strategy for the Coronavirus Disease 2019 Response policy was ever finalized. Release of an unfinalized policy could cause public confusion as to what constitutes final, implemented agency policy.

21.  The documents concerning a 2017 media communications policy, *see* Exhibit A at entry numbers 2-8, had previously been released pursuant to FOIA by the Department of Health and Human Services in 2017; consequently, CDC's initial release of those documents in response to Plaintiff's narrowed request here simply conformed to the earlier withholdings and the rationale used to justify them. In particular, in 2017, the policy was considered to be

---

[1] *See* Ex. A, entry numbers 1, 12-16, 18-20, 21-25, 29-32. In addition, entry number 30 consists of an email discussing edits to the proposed policy.
[2] *See id.* at entry numbers 2-8.
[3] *See id.* at entry numbers 27, 28, 33-35.
[4] *See id.* at entry numbers 9-11, 17, 26, 35.

tentative in nature because it had not yet been fully and formally released; as a result, there was concern that the final, formal iteration of the policy might very likely change in some respect from the version being discussed.  After receiving Plaintiff's list of challenged withholdings, the agency reexamined the documents and the withholding decisions applied to them.  As noted above in paragraph 18, the agency has now determined that a substantial portion of previously-withheld material should be released.  The remaining withholdings involve open, frank deliberative discussions on matters of policy between staff members.  Release could cause harm by chilling future free exchanges of ideas and opinions by agency leadership on similarly sensitive matters.

22.     Certain emails, *see* Ex. A at entry numbers 27-28, and 33-35, involve discussions about a clearance process at issue that was not intended or expected to be a long-term or permanent one.  Instead, it was an attempt by the government to articulate a framework for addressing – in the moment – the need for providing useful information as rapidly but also as thoughtfully as possible while the government and indeed the entire nation tried to deal as effectively as possible with a completely new, inherently unstable and unpredictable, and quickly evolving health crisis.

23.     Certain of the documents reflect communications to senior government officials from a senior presidential advisor regarding a coordinated media communication strategy for COVID-19. *See* Ex. A at entry numbers 9, 10, 11, 17, 26, 35. These documents and redactions are properly protected by the presidential communications privilege.

24.     CDC conducted a page-by-page analysis of each responsive document to determine whether any additional non-exempt material could be released. Where reasonably segregable non-exempt information was identified, it was released. There is no additional

reasonably segregable material to release because it is privileged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of September 2020, in Atlanta, Georgia.

*Roger Andoh*
Roger Andoh
Freedom of Information Act Officer
Centers for Disease Control and Prevention
Agency for Toxic Substances and Disease
    Registry
United States Department of Health and
    Human Services